

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-040-CV**

GEORGE DAVID GORDON, JR.,
A/K/A G. DAVID GORDON;
AMY GORDON; AND G. DAVID
GORDON & ASSOCIATES, P.C.,
AN OKLAHOMA PROFESSIONAL
CORPORATION

APPELLANTS

V.

ROBERT A. BRUNIG

APPELLEE

-----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

In three issues, Appellants George David Gordon, Jr., a/k/a G. David Gordon;

Amy Gordon; and G. David Gordon & Associates, P.C., an Oklahoma professional

corporation, appeal the trial court's rulings denying their motion to withdraw deemed

---

[1] *See* Tex. R. App. P. 47.4.

admissions and denying their requested jury charge instructions and questions. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2003, the Securities and Exchange Commission ("SEC") issued an "Order Directing Private Investigation and Designating Officers to Take Testimony" in *In the Matter of Lifestyle Innovations, Inc.* (FW-2574). The order identified Lifestyle Innovations, Inc. and another corporation and directed that a private investigation be conducted to determine whether any persons had engaged in violations of multiple sections of the Securities Act of 1933 and the Securities Exchange Act of 1934.[2]

In November 2003, the SEC served subpoenas, including one to Amy Gordon, requiring, among other things, the production of documents. Amy Gordon did not fully comply with the subpoena. In December 2003, the SEC filed an "Application for Order to Show Cause and Order Requiring Obedience to Subpoena" in federal court, requesting a court order enforcing the previously issued subpoenas.[3] The trial

---

[2] Specifically, according to the SEC, the investigation sought to determine whether David Gordon, D. Mark White, and possibly others—acting through entities and individuals they controlled, including Lakewood Development Corporation, Amy Gordon, and Paul Johnson—may have secretly acquired control over the management of Lifestyle Innovations, caused the company to file false and misleading reports with the SEC, and illegally sold the company's shares into the public market.

[3] The cause was assigned No. 4:03-CV-1478-A.

court thereafter entered orders to show cause directed at Amy Gordon and other persons and entities.

According to Appellee Robert A. Brunig, in January 2004, David Gordon retained Brunig to represent Amy Gordon in connection with the SEC's subpoena enforcement action (No. 4:03-CV-1478-A) and accepted Brunig's offer to perform legal services for $300 per hour. At the request of David Gordon, Brunig's role was subsequently expanded to include the representation of David Gordon and G. David Gordon & Associates in connection with the SEC's investigation in *In the Matter of Lifestyle Innovations, Inc.* (FW-2574). Brunig thereafter performed legal services for Appellants and provided them with periodic billing statements. Two payments were made to Brunig—one in the amount of $2,500 and another in the amount of $5,000.[4]

Brunig, acting pro se, sued Appellants in June 2007. His second amended petition alleged, among other things, claims for suit on a sworn account, averring that Appellants owed him $15,149.88 for legal services performed, and for attorney's fees. Appellants alleged several counterclaims, contending that Brunig had been retained to represent Lifestyle Innovations and Amy Gordon; that any services he provided for Amy Gordon, David Gordon, and G. David Gordon & Associates had been paid in full; that the only client of Brunig that remained indebted to him was

---

[4] The check in the amount of $2,500 was drawn on the "G. David Gordon & Associates, P.C." account, and the check in the amount of $5,000 was drawn on the "G. David Gordon & Associates, P.C. Trust" account.

Lifestyle Innovations; and that none of the Appellants had ever agreed that they would be responsible for Lifestyle Innovation's attorney's fees.

Brunig made discovery requests of Appellants, including a request for admissions. According to Brunig's Eighth Affidavit, he served his first request for admissions on Appellants' counsel via facsimile and email on May 27, 2008.[5] Brunig subsequently posited that the admissions were deemed admitted because Appellants' responses thereto were due June 30, 2008, but were not served until July 3, 2008.

On July 25, 2008, Appellants filed a motion to set aside the deemed admissions and to deem the responses and objections timely.[6] The trial court granted Appellants' motion to set aside the deemed admissions, determining that Brunig's first request for admissions was not served until July 26, 2008, and ordering that Appellants' responses to that request be served by August 28, 2008.

On September 15, 2008, Brunig filed his Eighth Affidavit, in which he stated that Appellants' responses to his first request for admissions were due August 28, 2008, but were not served until September 4, 2008, and, therefore, that he

___

[5] The first request for admissions sought admissions regarding, among other things, the SEC's actions in FW-2574 and No. 4:03-CV-1478-A, the numerous billing statements sent to G. David Gordon & Associates, and Appellants' failure to pay Brunig $15,149.88.

[6] We construe the part of Appellants' motion requesting the trial court to deem responses and objections timely as requesting the trial court to deem the July 3, 2008 responses to Brunig's requests for admission timely.

was—again—considering the matters addressed in his first request for admissions deemed admitted.

On September 19, 2008, Appellants filed a motion to declare their September 4, 2008 responses to Brunig's July 26, 2008 request for admissions timely served. Like the argument made at the hearing on their first motion to declare the responses timely served, Appellants argued in this motion that they had responded timely to Brunig's first request for admissions because they had served Brunig with responses on July 3, 2008. At a hearing on October 2, 2008, the trial court denied Appellants' motion, again reiterating that the July 3, 2008 responses had been set aside. The trial court also continued the trial, which had been set for October 6, 2008, until October 27, 2008.

On October 6, 2008, Appellants filed a motion to set aside the deemed admissions. At a hearing on the motion on October 10, 2008, Appellants argued that good cause existed to set aside the deemed admissions and that Brunig would not be prejudiced if the deemed admissions were set aside. The trial court denied the motion.

At trial, the trial court permitted Brunig to read each of the deemed admissions to the jury, directed a verdict in Brunig's favor on his sworn account claim, denied Appellants' requested jury instructions and questions, and submitted one question

to the jury concerning Brunig's claim for attorney's fees.[7] The jury awarded Brunig $27,500 in attorney's fees.

### III. DEEMED ADMISSIONS

In their first issue, Appellants argue that the trial court erred by denying their October 6, 2008 motion to set aside deemed admissions because (1) they served responses to Brunig's first request for admissions on July 3, 2008, and (2) they demonstrated good cause for the withdrawal of the admissions.

When a party fails to answer a request for admissions, the matters therein are deemed admitted. Tex. R. Civ. P. 198.2(c); *Wal-Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 355 (Tex. 1998). Such admissions are "conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." Tex. R. Civ. P. 198.3. The trial court may permit a party to withdraw deemed admissions if the party shows good cause for the withdrawal and the court finds that the parties relying on the admissions will not be unduly prejudiced and the presentation of the merits of the action will be subserved by the withdrawal. *Id.*; *Deggs*, 968 S.W.2d at 356. Good cause is thus the threshold standard for withdrawal of deemed admissions and is established by showing that the failure involved was an accident or mistake, rather than intentional or the result

---

[7] In addition to setting forth "factors to consider in determining the reasonableness of attorney's fees," the question asked, "What is a reasonable fee for the necessary services of Robert A. Brunig as attorney's fees for the prosecution of this case, stated in dollars and cents?"

6

of conscious indifference. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005); *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996).

A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Stelly*, 927 S.W.2d at 622. An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *Id.* A trial court abuses its discretion when it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

## A. July 3, 2008 Responses

Appellants argue that the trial court erred by denying the motion to set aside deemed admissions because they served responses to Brunig's first request for admissions on July 3, 2008, and, therefore, served Brunig with responses to the first request for admission before the August 28, 2008 due date. The record demonstrates that the trial court considered this argument on more than one occasion and that it rejected it each time. Specifically, at the August 15, 2008 hearing on Appellants' July 25, 2008 motion to set aside the deemed admissions, the trial court explained that it was setting aside the deemed admissions because Brunig had failed to properly serve Appellants with the requests. The trial court determined that Brunig had properly served Appellants with the first request for admissions on July 26, 2008, and that Appellants' responses were due August 28,

7

2008. Having determined that Brunig did not serve Appellants with his first request for admissions until July 26, 2008, the trial court made clear that Appellants could not rely on the responses that they had served Brunig on July 3, 2008, in response to Brunig's earlier, improperly served first request for admissions. The following exchange occurred:

> THE COURT: If you want him to answer the Request for Admissions, then you need to send them to him by mail.
>
> BRUNIG: Well, I have sent it to him by certified mail since then, but the other - -.
>
> THE COURT: Has he answered them yet?
>
> BRUNIG: What he's saying is let me rely on what I sent you back on July 3rd.
>
> THE COURT: No, he's got to start all over just like you do.

The following exchange also occurred:

> [Appellants' counsel]: . . . But I'm looking at my answers right now, and I'm counting - - the first 20 of them are admitted. I see more admissions on the back.
>
> THE COURT: I don't want to hear about that, because those things haven't even been [served] yet, as far as I'm concerned.

Appellants made the same argument at the October 2, 2008 hearing on Appellants' September 19, 2008 motion to declare the responses timely served. The trial court rejected it, again:

> [Appellants' counsel]: They were late. Now, I wanted to get the amendeds done earlier. I didn't for a personal reason. I'll be happy to

8

tell you, but what Mr. Brunig is trying to argue is that the original July ones don't count.

THE COURT: They don't.

[Appellants' counsel]: Why not?

THE COURT: Because I set all of that aside.

[Appellants' counsel]: You set aside that they were deemed, because you said that service was defective, but - -

THE COURT: Yeah, and then I started a new program. Let's start from scratch, and if you filed them late, then they are deemed admitted.

Trial courts have broad discretion in matters of discovery. *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Having set aside both the deemed admissions and Appellants' July 3, 2008 responses thereto, we hold that the trial court did not abuse its discretion by denying Appellants' October 6, 2008 motion to set aside deemed admissions, which argued in part that Appellants served responses to Brunig's first request for admissions on July 3, 2008. We overrule this part of Appellants' first issue.

## B.    Good Cause

Appellants also argue that they established good cause for the withdrawal of the deemed admissions. Appellants' counsel attached his affidavit to the October 6, 2008 motion to set aside the deemed admissions. Therein, counsel stated that his failure to timely respond to Brunig's first request for admissions was the result of accident or mistake because (1) he had a motion for rehearing due on September

9

2, 2008, in an appeal in the Beaumont Court of Appeals and (2) he was out of town when the responses were due because, on August 20, 2008, he had calendared a "short personal trip" to Las Vegas with a close friend and had departed August 27, 2008, and returned August 30, 2008. Regarding the motion for rehearing due in the appeal, counsel indicated that he was "completely and totally engrossed in the record" around the time that Appellants' responses to Brunig's first request for admissions were due. And as for his calendaring the Las Vegas trip at the same time the responses were due, counsel stated that he "simply overlooked the entry." Counsel's argument at the hearing on the motion mirrored the information attested to in the affidavit.

In light of Appellants' counsel's affidavit and argument and the relevant portions of the record, the trial court could have reasonably concluded that counsel made the conscious decision to work on the motion for rehearing and to travel to Las Vegas instead of timely serving the responses by August 28, 2008. Unlike in *Boulet v. State*, counsel did not miss the deadline for responding to the first request for admissions because of a calendaring error. *See* 189 S.W.3d 833, 836–37 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Unlike in *Spiecker v. Petroff*, counsel did not miss the deadline for responding to the request for admissions because of a clerical error. *See* 971 S.W.2d 536, 540 (Tex. App.—Dallas 1997, no pet). And unlike in *Deggs*, counsel did not learn about the existence of the deemed admissions for the first time at trial. *See* 968 S.W.2d at 356. Instead, Appellants' counsel

10

missed the due date, which he had properly calendared, because he was working on a motion for rehearing and because he went out of town on a personal trip.[8] Counsel does not indicate that his preoccupation with the motion for rehearing caused him to miss the deadline for serving Appellants' responses; rather, he merely contends that he was busy. And although counsel stated that he overlooked the entry on his calendar regarding the due date for the admissions when he scheduled his trip to Las Vegas—which he did on August 20, 1998, a full eight days before the responses were even due—he also confirmed that he took the trip because he was beginning a "new coaching season" on September 2, 2008, and that "if [he] didn't take [the] short 4-day vacation then, [he] may not get one at all for a very long time."

The admissions had already been deemed and set aside once, and Appellants delayed in filing the October 6, 2008 motion to set aside the deemed admissions until after the trial court had denied the September 19, 2008 motion to declare their responses to Brunig's requests for admissions timely served, which Appellants filed just over two weeks before the date the case was set for trial and which was based on an argument that the trial court had previously addressed and denied several times, as explained above. *See Webb v. Ray*, 944 S.W.2d 458, 461–62 (Tex.

---

[8] The cases that Appellants rely upon are inapposite. *See City of Houston v. Riner*, 896 S.W.2d 317, 319–20 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (sustaining appellant's argument that the trial court abused its discretion by refusing to permit the withdrawal of deemed admissions because appellants were not aware of the request for admission until trial); *N. River Ins. Co. of New Jersey v. Greene*, 824 S.W.2d 697, 701 (Tex. App.—El Paso 1992, writ denied) (sustaining appellant's good cause argument based on a calendar entry error).

11

App.—Houston [14th Dist.] 1997, no writ) (reasoning that counsel's actions show a consistent pattern of neglect and indifference).

Accordingly, we cannot conclude that the trial court acted arbitrarily or unreasonably or without reference to guiding rules and principles by concluding that Appellants failed to demonstrate good cause for the withdrawal of the deemed admissions. *See Stelly*, 927 S.W.2d at 622; *Downer*, 701 S.W.2d at 241. We hold that the trial court did not abuse its discretion by denying Appellants' motion to set aside the deemed admissions, and we overrule the remainder of Appellants' first issue.[9]

## IV. JURY CHARGE INSTRUCTIONS AND QUESTIONS—"CONTRACT ISSUES" AND "REPRESENTATIVE CAPACITY ISSUES"

In their second issue, Appellants argue that the trial court erred by denying their proposed jury charge instructions, questions, and definitions regarding "contract issues" and "representative capacity issues." Citing *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989), Appellants argue that they introduced evidence that Brunig was never retained to represent David Gordon or G. David Gordon & Associates but rather only Lifestyle Innovations, Paul Johnson, and Amy Gordon; that this evidence controverted the deemed admissions; that Brunig did not object to this evidence; and

---

[9] Having determined that the trial court did not abuse its discretion by denying Appellants' motion for lack of good cause, we need not address Appellants' undue prejudice argument. *See* Tex. R. App. P. 47.1; *Deggs*, 968 S.W.2d at 356.

12

that legally sufficient evidence therefore existed requiring the submission of the proposed instructions, questions, and definitions.[10]

Once admitted, an admission, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. *Id.* However, admissions can be waived if the party relying on deemed admissions does not protect the record by objecting to the introduction of controverting evidence and obtaining a ruling on the objection. *Id.*; *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 503 (Tex. App.—San Antonio 2004, pet. denied). An objection is required, however, only when the offered evidence clearly contradicts the admissions. *Willowbrook Foods*, 147 S.W.3d at 503.

Appellants contend that the following evidence—which Brunig did not object to—controverted the deemed admissions:

·Brunig testified on cross-examination that he knew that David Gordon was an attorney for Lifestyle Innovations.

·Brunig acknowledged that neither David Gordon nor G. David Gordon & Associates were respondents to the federal lawsuit.

·Having reviewed several documents, Timothy McCole testified that he "would assume that [Brunig] represented Lifestyle."

·David Gordon testified that he was Lifestyle Innovations' attorney for many years.

·Brunig's billings reference "SEC v. Lifestyle Innovations, et al" and "In re Lifestyle Innovations, Inc."

---

[10] Appellants do not challenge the trial court's decision to grant Brunig a directed verdict.

13

·Appellants' exhibits show that neither David Gordon nor G. David Gordon & Associates were parties to the federal court case and that Brunig announced at several hearings that he represented Amy Gordon, Lifestyle Innovations, and Paul Johnson.

Appellants do not identify which deemed admissions this evidence purportedly controverts. Having reviewed each of the deemed admissions, and considering Appellants' only argument that Brunig was never retained to represent David Gordon or G. David Gordon & Associates, we conclude that Appellants' purported controverting evidence specifically implicates only one of the deemed admissions: number 28, which addresses David Gordon's decision to expand Brunig's representation of Amy Gordon to include representation of David Gordon and G. David Gordon & Associates. It states,

> [A]t the request and direction of George David Gordon, Jr., Robert A. Brunig's role was expanded to include the representation of the interests of George David Gordon, Jr., and G. David Gordon & Associates, as well as . . . Amy Gordon in connection with the United States Securities and Exchange Commission's investigation in In re: Lifestyle Innovations, Inc., Matter No. FW-02574A SEC.

But none of the evidence that Appellants direct us to clearly controverted deemed admission number 28. In other words, none of the evidence demonstrates or raises any inference or issue that David Gordon *did not* expand Brunig's representation of Amy Gordon to include representation of David Gordon and G. David Gordon & Associates; rather, the evidence raises issues regarding Brunig's representation of Lifestyle Innovations. And even if Brunig did represent Lifestyle Innovations, as

14

Appellants contend, the purported controverting evidence relied on by Appellants does not demonstrate that Brunig represented Lifestyle Innovations to the exclusion of any representation of David Gordon and G. David Gordon & Associates. Accordingly, we hold that the trial court did not abuse its discretion by denying Appellants' proposed jury charge instructions, questions, and definitions regarding "contract issues" and "representative capacity issues."  *See Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 345 (Tex. App.—San Antonio 2000, pet. denied) (stating that the standard of review for an alleged error in the jury charge is abuse of discretion). We overrule Appellants' second issue.

## V. PROPOSED JURY CHARGE QUESTIONS—UNDERLYING CLAIM DAMAGES AND ATTORNEY'S FEES

In their third issue, Appellants argue that the trial court erred by not submitting separate jury questions for each defendant inquiring into (a) damages for the sworn account claim and (b) reasonable and necessary attorney's fees for Brunig's attorney's fees claim.[11]

As detailed above, no evidence contradicted or controverted the deemed admissions, and the trial court directed a verdict in Brunig's favor on his sworn

---

[11] ⬆ At the outset of the third issue, Appellants state that Brunig "was required to segregate his attorney[']s fees as to both clients and claims in his underlying claim for past due attorney[']s fees as well as for the attorney's fees claims necessitated by the case at bar."  Notwithstanding this wording, Appellants' argument does not raise an attorney's-fees-segregation issue, i.e., that Brunig was required to segregate fees between claims for which they are recoverable and claims for which they are not recoverable.

account claim.  Because the trial court directed a verdict for Brunig, it did not submit the issue to the jury.  Because the trial court did not submit the issue to the jury, it did not err by not submitting separate questions for each defendant inquiring into damages for the sworn account claim.  Appellants do not argue that the trial court erred by granting a directed verdict in favor of Brunig on his sworn account claim, nor do we interpret Appellants to raise that argument in this issue.  We overrule this part of Appellants' third issue.

As for Appellants' argument that the trial court should have submitted separate questions for each defendant inquiring into the amount of reasonable and necessary attorney's fees incurred by Brunig as part of his prosecution of the case against each defendant, Appellants set forth no citation to any authority to support this contention, nor have we located any after our own search.  The only authority cited by Appellants in the entirety of the third issue is *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991), which addresses a segregation issue not asserted by Appellants in this argument.[12] Therefore, we hold that this part of Appellants' third issue is inadequately briefed and, consequently, not preserved for appellate review.

---

[12] To the extent Appellants mean to argue that Brunig was required to segregate his attorney's fees as detailed in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–14 (Tex. 2006), this argument is waived as inadequately briefed because Appellants set forth no argument or analysis addressing the facts of this case in light of *Chapa*'s holding that "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *See id*. at 313–14; *see also* Tex. R. App. P. 38.1(i).

*See* Tex. R. App. P. 38.1(i) (requiring appellate brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied) (holding that appellee waived argument because she cited no authority whatsoever in support thereof).  We overrule the remainder of Appellants' third issue.

## VI. CONCLUSION

Having overruled Appellants' three issues, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL:   MCCOY and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  May 20, 2010